404 F.2d 490
 CASCADE EMPLOYERS' ASSOCIATION, Inc., Corvallis Sand & Gravel Co., Eugene Sand & Gravel Co., and Wildish Sand & Gravel Co., Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 22197.
 United States Court of Appeals Ninth Circuit.
 December 10, 1968.
 
 J. H. Clarke (argued), of McColloch, Dezendorf & Spears, Portland, Or., for petitioners.
 Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Michael N. Sohn, Corinna Lothar Metcalf, Washington, D. C., Robert J. Wiener, NLRB, Clifford D. O'Brien (argued), Portland, Or., Thomas P. Graham, Regional Counsel, Seattle, Wash., Michael Sohn, Washington, D. C., for respondent.
 Before HAMLIN, BROWNING and CARTER, Circuit Judges.
 HAMLIN, Circuit Judge.
 
 
 1
 Petitioners, consisting of a multi-employer bargaining unit and some of the individual companies within that unit,[1] seek review of an order of the National Labor Relations Board entered March 13, 1963. This court has jurisdiction under section 10(e) and (f) of Labor-Management Relations Act (29 U.S.C. § 160(e) and (f)). For the reasons stated below, we deny the petition.
 
 
 2
 Petitioners had a collective bargaining agreement with the Hoisting and Portable Engineers Local Union No. 701 (the Union) which expired December 31, 1958. After negotiations for a new contract had commenced, Cascade, the employers' bargaining unit, filed unfair labor practice charges against the Union, alleging that the Union had unlawfully pressured three members of the employers' unit[2] into signing separate bargaining agreements. The trial examiner rendered an Intermediate Report finding the Union guilty of unfair labor practices, and recommended that the Union be ordered to cease giving effect to the unlawful agreements it had coerced. The Board reversed the trial examiner's findings, but remanded the case to him for additional evidence. The trial examiner then issued a Supplemental Intermediate Report, agreeing with the Board that the employers' complaint should be dismissed. The employers filed exceptions, and in its final order dated March 13, 1963, the Board reversed the trial examiner, found the Union guilty of unfair labor practices, and ordered the parties to cease to give effect to the agreements.
 
 
 3
 Pursuant to their agreements, the companies had already paid to union members extra wages, and had made payments to the trustees of the Union's health and welfare and pension funds. At no time during the prolonged proceedings before the Board did the petitioners mention these payments or ask for their return. Nor did the Board's order refer to any payments already made under the illegal contracts. Petitioners at no time have asked the Board to reconsider or modify its decision to include an order for the return of these payments.[3] However, approximately a year after the Board made its final order, the petitioners instituted suit in an Oregon state court against the Union and the trustees to recover the payments that had been made. The Oregon courts denied relief, holding that petitioners sought a remedy for an unfair labor practice, a subject matter within the exclusive jurisdiction of the Board. Petitioners' petition for certiorari was denied May 15, 1967. 387 U.S. 904, 87 S.Ct. 1683, 18 L.Ed.2d 622. The instant petition followed. Petitioners do not contest the finding that the Board has exclusive jurisdiction to order repayment. The sole issue on this appeal is whether this court should order the Board to reopen petitioners' case before the Board despite their failure to ask for repayment when the case was originally before the Board or since.
 
 
 4
 29 U.S.C. § 160(e) provides in part that "no objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court [of appeals], unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." Petitioners point out factors which they contend constitute extraordinary circumstances. Petitioners emphasize that it was not clear until after their case had been heard before the Board that decisions of the Board established that it had the power to grant the remedy sought by petitioners. Also, they appeal to this court to mitigate some of the claimed harshness caused by the rapid growth of the preemption doctrine. We have weighed petitioners' claims carefully against the policies of the Labor-Management Relations Act. We hold that under the circumstances of this case petitioners are not entitled to relief under section 160 (e).
 
 
 5
 In N.L.R.B. v. Pinkerton's National Detective Agency, 202 F.2d 230 (9th Cir. 1953), a court of appeals decision rendered shortly before the oral argument in that case made a type of contract lawful which the Board had found to be unlawful. This court upheld the Board's decision because the legality of the contract had not been raised in the Board proceedings. N.L.R.B. v. Lundy Manufacturing Corp., 286 F.2d 424 (2nd Cir. 1960), a case relied upon by petitioners, is not contra. Lundy held that a respondent objecting to enforcement of a Board order could appeal on the basis of a decision handed down after Board proceedings had ended. However, there the respondent had "consistently argued" before the Board the point which the new decision decided, and it had merely failed to specifically criticize the case which had been overruled. In contrast, petitioners here never mentioned the additional relief they sought. In vague dictum, the Lundy court did state, at p. 426, that even if respondent had said nothing before the Board, the failure to urge the objection would have been excused because of extraordinary circumstances. However, in Lundy the new decision had completely reversed a settled rule which had already been applied by a court of appeals. Here, petitioners were not faced with any settled rule against the Board's ability to order repayment. Rather, the increasing scope of the pre-emption doctrine should have warned the petitioners to seek all their remedies before the Board.
 
 
 6
 Petitioners also cite N.L.R.B. v. Richards, 265 F.2d 855 (3rd Cir. 1959), in support of their position. In Richards the trial examiner recommended to the Board that an employer had committed no unfair labor practices. The Board reversed, and petitioned to the court of appeals to enforce its order against the employer. Before the court of appeals the employer for the first time objected to the Board's provision for loss of pay. The court remanded the case to the Board for a finding on this objection. The court emphasized that the employer had had no opportunity to make his objection before the Board. The trial examiner had found in favor of the employer; and a party need not raise an issue initially before the Board where the issue is created by the Board's own order. Here, however, petitioners admit that they had an opportunity to raise the issue of repayment after the examiner's original recommended opinion. Indeed, they could have raised the issue at any time during the proceedings, for it was an additional remedy sought by them. Thus, Richards does not support a finding of "extraordinary circumstances" under the facts of this case.
 
 
 7
 It may be that this is a hardship case, and that if the matter had been put before the Board it would have ordered repayment. But petitioners seek this remedy five and one-half years after the Board had finally disposed of the matter. That the Board's order was in favor of petitioners can make no difference. "The limitation of section 10 (e) applies a fortiori to the consideration of an objection to enforcement made by a respondent who has consented to the terms of the order." N.L.R.B. v. Ochoa Fertilizer Corp., 368 U.S. 318, 82 S.Ct. 344, 7 L.Ed.2d 312 (1961). The function of the National Labor Relations Board is best served if parties put all their claims and desired remedies before it. Absent extraordinary circumstances, this is what section 10(e) demands. As we have said, the petitioners have never asked the Board to provide the remedy which they now seek. As we find no extraordinary circumstances present in this case, the petition is denied.
 
 
 
 Notes:
 
 
 [1]
 Petitioners are Cascade Employers' Association, a non-profit corporation, Corvallis Sand & Gravel Co., Eugene Sand & Gravel Co., and Wildish Sand & Gravel Co., all Oregon corporations
 
 
 [2]
 Mentioned in footnote one
 
 
 [3]
 The Code of Federal Regulations provides that a motion for reconsideration, rehearing, or reopening of the record after the Board's decision or order "shall be filed within twenty days or such further period as the Board may allow, after the service of its decision or order, * * *."